UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTIS T. MOORE, and<br>KRISTINA A. MOORE,<br><br>           Plaintiffs,<br><br>    v.<br><br>COUNTY OF SACRAMENTO,<br>DEPARTMENT OF CHILD, FAMILY<br>AND ADULT SERVICES,<br><br>           Defendant. | No.  2:19-cv-844-JAM-KJN PS<br><br><u>FINDINGS AND RECOMMENDATIONS ON DEFENDANT'S MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS</u><br><br>(ECF No. 23.) |

    Plaintiffs Otis and Kristina Moore, proceeding pro se, allege the County of Sacramento wrongfully removed their grandchildren from their custody.[1] Plaintiffs primarily claim their First, Fourth, and Fourteenth Amendment Constitutional rights were violated; they seek monetary and injunctive relief. (ECF No. 1.) The County now moves to dismiss, arguing that the court lacks subject matter jurisdiction to hear some of plaintiffs' claims, all claims are time-barred, and the Complaint otherwise fails to state claims on which relief might be granted. (ECF No. 23.)

    For the reasons that follow, the court recommends the County's motion be granted, and plaintiffs be denied leave to amend.

///

---

[1] This action proceeds before the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c)(21).

1

**Background**[2]

Otis and Kristina Moore have two adult-age children, Karissa and Kamara, and six grandchildren: S.S., E.G., Ps.M, Pc.M., C.M., and K.M.[3]  (ECF No. 1 at 4; see also ECF No. 18 at 8, 13.)  In the summer of 2014, Sacramento Human Services Supervisor Essence Webb ("Webb") requested plaintiffs provide shelter for Karissa, Kamara, S.S., E.G., Pc.M., and C.M.  (ECF No. 1 at 6; see also ECF No. 18 at 9.)  At that time, K.M. was not yet born, and Ps.M. was already living with his grandparents—and had been so for close to a decade.  (See Id. at 20-21.)  Plaintiffs agreed to shelter the four grandchildren, but did not want to house their daughters, given their drug history.  (Id.)  However, after Webb insisted, plaintiffs agreed to take in everyone.  (Id.; see also ECF No. 25 at 8.)  Webb had plaintiffs sign a "Voluntary Caretaker Authorization Form," which gave plaintiffs temporary authority to care for the four grandchildren; this form did not otherwise affect legal custody.  (ECF No. 1 at 6.)  Webb did not discuss the County's "Family Maintenance Program" with plaintiffs at that time.  (Id.)

In mid-August of 2014, Kamara gave birth to K.M.  (ECF No. 18 at 9-10). On September 4, plaintiffs visited their granddaughter at U.C. Davis Medical Center after the infant sustained an injury.  (ECF No. 1 at 6.)  During the hospital visit, plaintiffs (alongside Karissa and Kamara) met with Emergency Response Social Worker Nikkita Moorer ("Moorer").  (ECF No. 1 at 6.)  Moorer informed plaintiffs that the County was going to place all six grandchildren in foster care because plaintiffs house was a "drug and violent house."  (Id.)  Plaintiffs responded that Moorer had mistaken their home for Karissa and Kamara's former house.  (Id.)  Five days later, Sacramento

---

[2] These facts primarily derive from the Complaint (ECF No. 1), as well as certain public records which have been submitted to the court in this proceeding.  (See ECF No. 18 at Exhibit A).  The court finds it appropriate to take judicial notice of these public records under Fed. R. Evid. 201(b).  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (finding that a court may consider matters subject to judicial notice without converting the motion to dismiss into a motion for summary judgment."); see also Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (judicial notice of court filings and other matters of public record appropriate).  All facts are construed in the light most favorable to plaintiff—the non-moving party.  Faulkner v. ADT Sec. Servs., 706 F.3d at 1019.  However, the court does not assume the truth of any conclusory factual allegations or legal conclusions.  Paulsen, 559 F.3d at 1071.

[3] At times the court will use the first names of the individuals involved, given the familial relations.  No disrespect is intended.

1  Superior Court Referee Carol Chrisman informed plaintiffs that the grandchildren would be
2  "detained by the court" and placed in foster care. (ECF No. 1 at 6.)  Plaintiffs again argued that
3  the County "had the wrong house." (Id. at 6-7.)
4  　　　　On September 15, 2014, "Psychosocial Social Worker" Jillian Cuevas visited plaintiffs'
5  residence, under the premise of conducting a "home assessment." (Id. at 9.)  Instead, Cuevas
6  conducted an "in-home psychological assessment." (Id.)  Cuevas's report "gave 10 reasons why
7  [plaintiffs] should not have [their] grandchildren placed in [their] home." (Id.)  Plaintiffs
8  contended Cuevas was biased and relied on erroneous information. (Id.)  The home assessment
9  was conducted on a later date. (Id.)
10 　　　　On December 2, 2014, plaintiffs met with Sacramento County Counsel Christophe
11 Guillon. (Id. at 7.)  There, plaintiffs questioned Guillon about why he failed to turn over a
12 Detention Report from August 2010. (Id. at 7.)  Plaintiffs accused Guillon of using the Report "to
13 create a negative narrative" about their family life, and argued that some of the details contained
14 therein were fabricated by a County social worker. (Id.)  Guillon accused plaintiffs of stealing
15 their copy of the Report. (Id.)  That same day, Sacramento Superior Court Referee Marlene
16 Hertoghe issued an order permanently removing the grandchildren from plaintiffs' home. (Id. at
17 7.)  Referee Hertoghe noted that Mrs. Moore failed to "take parenting classes" as ordered, and
18 stated "the apple doesn't fall far from the tree." (Id. at 8.)  The grandchildren have since been
19 adopted. (See ECF No. 21 at 2:11-14.)
20 　　　　Plaintiffs complained to then-Director of Health and Human Services, Dr. Sherri Heller,
21 and in 2016, Heller ordered an investigation. (ECF No. 1 at 8-9)  Two weeks later, a County
22 investigator informed plaintiffs that her investigation showed Mrs. Moore was never ordered to
23 take parenting classes (contrary to Referee Hertoghe's findings). (Id.)  Sometime after this
24 conversation, plaintiffs met with County Supervisor Don Nottoli, then-Deputy Executive Paul
25 Lake, and Heller. (Id.)  Plaintiffs complained of County employees' biases, and questioned why
26 the County did not utilize the "Emergency Housing Program" in July 2014 (instead of the
27 "Voluntary Caretaker Form."). (Id.)  Heller said this program had been shut down, but plaintiffs
28 disputed this assertion and accused Heller of lying. (Id.)

3

**Procedural Posture**

Plaintiffs filed their Complaint with this court on May 13, 2019.  (ECF No. 1.)  Therein, they prayed for compensatory and punitive damages for the "pain and suffering, emotional distress, and trauma" suffered by both them and their grandchildren.  Plaintiffs also prayed for injunctive relief, that "this court [order] all 6 grandchildren returned."  (Id.)

The County answered in November 2019, and plaintiffs filed a response to the County's answer.  (ECF Nos. 13, 18.)  On December 2, the County indicated it anticipated filing a motion for judgment on the pleadings, and so at a February 3, 2020 hearing, the court set a briefing schedule.  (ECF Nos. 14, 22.)

On March 5, 2020, the County filed its Motion to Dismiss or, in the alternative, Motion for Judgment on the Pleadings.  (ECF No. 23.)  Plaintiffs failed to file timely opposition, and so the court vacated the hearing and ordered an opposition brief.  (ECF No. 24.)  On April 2, plaintiffs filed their opposition.  (ECF No. 25.)  On April 30, 2020, the County filed its reply brief.  (ECF No. 26.)

**Parties' Arguments**

The County's motion under Rule 12 is multifaceted.  First, the County argues plaintiffs are seeking a de-facto appeal of the state court judgment, and federal courts have "no jurisdiction to revisit, review, or modify a state court judgment."  Second, it argues plaintiffs lack standing to assert any "Right to Familial Association" claim, arguing grandparents have no such right under Ninth Circuit precedent.  Third, it asserts plaintiffs' constitutional claims are time barred, as the allegedly-wrongful conduct occurred in 2014.  Fourth, the County avers the Complaint either fails to allege sufficient facts to support a claim, or asserts injuries under inapplicable statutes.  Thus, the County requests dismissal of the complaint without leave to amend.

Plaintiffs' pro se opposition brief reasserts their belief that the sources of law cited in the Complaint are appropriate, and enough facts exist to support those claims.  They further argue their relationship with their grandchildren is "so intimate and essential" that it is worthy of Constitutional protections.  Plaintiffs contend they are not trying to relitigate a state court proceeding, and argue that events occurring after 2014 effectively tolled the limitations period.

**Legal Standard**

Rule 8(a)[4] requires that a complaint be "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." A responding party may present certain defenses to a complaint by motion, including: (a) challenges to the court's subject-matter jurisdiction, and (b) challenges to the sufficiency of the complaint. See Rule 12(b).

*(a) Subject Matter Jurisdiction*

A Rule 12(b)(1) challenge to the court's subject-matter jurisdiction may be raised at any point in the litigation. See Rule 12(h)(3). This is so because subject-matter jurisdiction concerns "the courts' statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 89 (1998) (emphasis omitted). Constitutional power is governed by Article III, which requires the existence of "an actual case or controversy"—a core component of which is "standing." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). The "standing" doctrine requires a plaintiff to show (1) he or she has "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

Federal courts are courts of limited jurisdiction, and are presumptively without subject-matter jurisdiction over civil actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Thus, burden of establishing subject matter jurisdiction—including standing, rests upon the party asserting jurisdiction. Id.; Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) ("[A] lack of Article III standing requires dismissal for lack of subject matter jurisdiction[.]") Because subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived. United States v. Cotton, 535 U.S. 625, 630 (2002).

---

[4] Citations to the "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

Rule 12(b)(1) jurisdictional attacks can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In deciding a facial Rule 12(b)(1) motion, the court "must assume the allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor." Ryan v. Salisbury, 382 F. Supp. 3d 1062, 1073 (D. Haw. 2019) (citing Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004)). By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. Safe Air, 373 F.3d at 1039.

Further, federal courts have no jurisdiction over claims that are "obviously frivolous," or "obviously without merit." Hagans v. Lavine, 415 U.S. 528, 537 (1974). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous under Rule 12(b)(1) where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327.

*(b) Sufficiency of the Pleadings*

Prior to the filing of a responsive pleading, a defendant may challenge the sufficiency of the complaint under Rule 12(b)(6). Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). *After* the responsive pleading is filed, however, a defendant may also move for "judgment on the pleadings" under Rule 12(c). Gregg v. Hawaii, Dep't of Pub. Safety, 870 F.3d 883, 887 (9th Cir. 2017). These two motions are "functionally identical," as the same legal standards apply. Id. A judgment on the pleadings is properly granted when, "taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." Id. A claim can be dismissed for insufficiency in one of two scenarios: where the complaint lacks a cognizable legal theory, or where it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Mollett v. Netflix, Inc.*,* 795 F.3d 1062, 1065 (9th Cir. 2015).

1    In considering a Rule 12(c) motion, the allegations of the non-moving party must be
2    accepted as true and viewed in a light most favorable to the plaintiff. Gregg, 870 F.3d at 887;
3    Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). The court is not, however, required
4    to accept as true "conclusory [factual] allegations that are contradicted by documents referred to
5    in the complaint," or "legal conclusions merely because they are cast in the form of factual
6    allegations." Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). Thus, to avoid dismissal
7    for insufficiency, a complaint must contain more than "naked assertions," "labels and
8    conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v.
9    Twombly, 550 U.S. 544, 555-57 (2007). Simply, the complaint "must contain sufficient factual
10   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,
11   556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). Plausibility means pleading
12   "factual content that allows the court to draw the reasonable inference that the defendant is liable
13   for the misconduct alleged." Id.
14   Pro se pleadings are to be liberally construed. Hebbe v. Pliler, 627 F.3d 338, 342 & fn. 7
15   (9th Cir. 2010) (liberal construction appropriate even post–Iqbal). Prior to dismissal, the court is
16   to tell the plaintiff of deficiencies in the complaint and give the plaintiff an opportunity to cure
17   them—if it appears at all possible the defects can be corrected. See Lopez v. Smith, 203 F.3d
18   1122, 1130-31 (9th Cir. 2000). However, if amendment would be futile, no leave to amend need
19   be given. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996). Although the court
20   may not consider an opposition brief to determine the propriety of a Rule 12 motion, it may
21   consider allegations raised in opposition papers in deciding whether to grant leave to amend. Cf.
22   Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) with Broam v.
23   Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).
24   **Analysis**
25   Here, plaintiffs' factual scenario is tied to a single event—the alleged wrongful-removal
26   of their six grandchildren from their home in the latter half of 2014. To this end, plaintiffs have
27   alleged numerous theories in their Complaint, including under 42 U.S.C. §§ 1983 and 1985;
28   49 U.S.C. § 40115; and 18 U.S.C. § 1519. Under Section 1983, the Complaint asserts violations

of plaintiffs' First Amendment rights, their Fourth Amendment right to be free from unlawful seizures, their Fourteenth Amendment right to due process, and their Fourteenth Amendment substantive due process right to "familial association."  Plaintiffs seek money damages and injunctive relief (a return of the grandchildren).  They state claims against two Sacramento County departments, though they name seven individual actors throughout the Complaint.  Further, plaintiffs have expanded their factual allegations and theories in their briefs filed with this court, appearing at times to assert race-based equal-protection claims relating to the actions of the County's department supervisors.

Treating plaintiffs' allegations liberally, the court finds it lacks subject matter jurisdiction over some of the claims, and the remainder fail under Rule 12(c).  More importantly, it does not appear possible for plaintiffs to cure these defects upon amendment.  Thus, the undersigned recommends dismissal with prejudice.

**I.    The court has no power to reverse a state-court custody decision.**

First, it is important that plaintiffs be aware of the following:  this court has no jurisdiction to review a state court's custody determinations, as this issue is barred by the Rooker-Feldman doctrine.  See Wolfe, 392 F.3d at 362 ("Rooker-Feldman bars federal district courts from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment.").  The Ninth Circuit has described the Rooker-Feldman prohibition thusly:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, *and seeks relief from a state court judgment based on that decision*, Rooker– Feldman bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker– Feldman does not bar jurisdiction.

Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003) (emphasis added).

The court notes plaintiffs' contention that their case concerns alleged violations of federally-protected rights (ECF No. 25 at 9), and for this reason the court's analysis continues below.  However, the Complaint also clearly requests "this court to have all 6 grandchildren returned to them . . . ."  (ECF No. 1 at 10.)  The undersigned notes from the parties' filings that the grandchildren have since been adopted, (see ECF No. 21 at 2:11-14.), which indicates custody

proceedings have taken place in the Superior Court.  Thus, the Complaint's prayer for injunctive relief goes to the heart of the Superior Court's custody proceedings, and is therefore barred by Rooker-Feldman.  See, e.g., Wood v. Kern Cty. Child Protective Servs., 2014 WL 1664885, at *7 (E.D. Cal. Apr. 23, 2014) (determining that, to the extent plaintiffs' complaint concerned the state-court custody proceedings, "the Court is unable to review the propriety of the juvenile dependency proceedings, the termination of parental rights, or the children's ultimate adoption according to the Rooker–Feldman doctrine.").

**II.     The court has no subject matter jurisdiction over the following frivolous claims.**

As noted in the legal standard section, federal courts have no jurisdiction over claims that lack an arguable basis either in law or in fact.  Hagans, 415 U.S. at 537 (1974); Neitzke, 490 U.S. at 325; Franklin, 745 F.2d at 1227-28.  Here, the Complaint asserts claims under 49 U.S.C. § 40115 and 18 U.S.C. § 1519.  (ECF No. 1 at 3.)

First, 49 U.S.C. § 40115 concerns the public disclosure of information concerning air safety and transportation.  This statute is clearly inapplicable to plaintiffs' claims.  Second, 18 U.S.C. § 1519 is a federal criminal statute penalizing the falsification of documents in an attempt to "to impede, obstruct, or influence" federal investigations.  As many courts have noted, statutes such as these do not afford a private citizen a right of action.  See Diamond v. Charles, 476 U.S. 54, 64–65 (1986) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); Glassey v. Amano Corp., 2006 WL 889519, at *3 (N.D. Cal. Mar. 31, 2006), aff'd, 285 F. App'x 426 (9th Cir. 2008) ("Private parties generally lack standing to enforce federal criminal statutes . . . [Plaintiff] lacks standing to enforce any cause of action based on Title 18 that he has alleged.")  Thus, these two claims must be dismissed for lack of subject matter jurisdiction, as they are obviously frivolous.  Neitzke, 490 U.S. at 327; see also, e.g., Bratset v. Davis Joint Unified Sch. Dist., 2017 WL 6484308, at *4 (E.D. Cal. Dec. 19, 2017), report and recommendation adopted, 2018 WL 684845 (E.D. Cal. Feb. 2, 2018) (18 U.S.C. § 1519 is a federal criminal statute that does not provide a private right of action."); see also Peavey v. Holder, 657 F.Supp.2d 180, 190 (D. D.C. 2009) ("to date, no circuit or Supreme Court opinion has held that § 1519 creates a private right of action")).

### III. Plaintiffs lack standing to bring a Fourth Amendment claim on behalf of others.

The court observes one more issue with its subject matter jurisdiction: plaintiffs' claim asserting violations of the Fourth Amendment's prohibition on unreasonable seizures. This claim arises under 42 U.S.C. § 1983—a federal statute—and so statutory subject matter jurisdiction is had. However, the court has no *constitutional* power to hear this claim because plaintiffs lack standing to bring it. Steel Co., 523 U.S. at 89; Lujan, 504 U.S. at 560. Simply, the Complaint's assertion of a Fourth Amendment injury is personal to the grandchildren, and generally cannot be asserted by their grandparents. See Friends of the Earth, 528 U.S. at 180-81 (holding that standing requires, among other things, the plaintiff to show "he or she has suffered an 'injury in fact' . . . ."; see also Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 369 (9th Cir. 1998) (stating that a person does not have standing to vicariously assert the Fourth Amendment rights challenging the seizure of another person). Further, as it appears from the parties' joint letter that the grandchildren have since been adopted, and so plaintiffs would have no right to assert these claims on behalf of the grandchildren as, say, guardians ad litem. See, e.g., Rule 17(c)(2) (requiring a court to "appoint a guardian ad litem—or issue another appropriate order— to protect a minor or incompetent person who is unrepresented in an action."); Johns v. San Diego, 114 F.3d 874, 877 (9th Cir. 1997) (affirming dismissal of minor-plaintiff, noting that "[b]ecause Casey is a minor, he lacked the capacity to sue on own."). Because the court has no power to rule on the propriety of any Fourth Amendment claim, it must be dismissed for lack of subject matter jurisdiction.

### IV. The remainder of plaintiffs' claims are time-barred.

The court has spent considerable time reviewing plaintiffs' Complaint and accompanying briefs. (ECF Nos. 1, 18, 25.) In doing so, the court has been mindful of the rules calling for liberal treatment of pro se litigants' filings, the liberal opportunities to amend, and the notion that a court may take statements made in briefs into consideration when analyzing whether amendment is proper. Hebbe, 627 F.3d at 342 & fn. 7; Lopez, 203 F.3d at 1130-31; Broam, 320 F.3d at 1026 n.2. Even with this liberal treatment, the undersigned concludes that the Complaint fails under Rule 12(c), and amendment would be futile. Cahill, 80 F.3d at 339.

Plaintiffs' complaint states claims under 42 U.S.C. § 1983 for alleged violations of their First and Fourteenth Amendment substantive due process rights to privacy and familial association,[5] as well as a conspiracy-style claim under 42 U.S.C. § 1985. (ECF No. 1 at 2, 4.) Further, in plaintiffs' opposition brief, they appear to contend the County has a custom of treating

---

[5] Claims concerning a parent's right to familial association are typically analyzed under the Fourteenth Amendment due process clause. See Lee v. City of L.A., 250 F.3d 668, 685 (9th Cir. 2001) ("It is well established that a parent has a 'fundamental liberty interest' in 'the companionship and society of his or her child.'"); see also Quiroz v. Short, 85 F. Supp. 3d 1092, 1108 (N.D. Cal. 2015) (collecting cases and noting that the right to maintain familial relationships is more properly categorized under the Fourteenth Amendment rather than the First Amendment). As the County notes, this "constitutionally protected liberty interest in making decisions about the care, custody, and control of [] children" is typically afforded to parents, but has never been extended to grandparents in the Ninth Circuit. Miller v. Cal. Dep't of Soc. Servs., 355 F.3d 1172, 1175-76 (9th Cir. 2004); see also Mullins v. Oregon, 57 F.3d 789, 794, 797 (9th Cir. 1995) (holding that grandparents, by virtue of genetic link alone, had no liberty interest in parenting their grandchildren). To plaintiffs' credit, they persuasively argue that cases exist that grant grandparents standing to bring a parental-liberty claim if they had a 'long-standing custodial relationship' with their grandchildren. See Osborne v. Cty. of Riverside, 385 F. Supp. 2d 1048, 1054-55 (C.D. Cal. 2005) ("The court concludes that . . . grandparents have no liberty interest in familial integrity or association with their grandchildren 'by virtue of genetic link alone,' but grandparents who have 'a long-standing custodial relationship' with their grandchildren such that together they constitute an 'existing family unit' do possess a liberty interest in familial integrity and association.") (citing Moore v. City of East Cleveland, 431 U.S. 494, 499 (1977) and distinguishing Mullins, 57 F.3d at 794); see also Sanchez v. Cty. of Santa Clara, 2018 WL 3956427, at *8-9 (N.D. Cal. Aug. 17, 2018); Rees v. Office of Children & Youth, 744 F. Supp. 2d 434, 443-56 (W.D. Pa. 2010); Caldwell v. Brown, 2010 WL 3501839, at *2 (W.D. Wash. Sep. 3, 2010) ("The mere fact of blood relation or even the close personal ties associated with extended family do not [] give rise to a constitutionally-protected interest. It is only when extended family members have long-standing custodial relationships and constitute an 'existing family unit' that a liberty interest in familial association and integrity arises."); but see Sims v. Cortese, 2007 WL 1394505, at *4 (N.D. Cal. May 10, 2007) (questioning the authority and applicability of the rule in Osborne, and relying instead on the plain language of Miller).

The court provides this primer for one reason only: in order for the court to speak on the issue it has determined is dispositive—that plaintiffs' claims are time-barred—it must have subject matter jurisdiction over these claims—meaning plaintiffs must have standing. For purposes of expedience, the court will assume the test described in Osborne is viable—thereby theoretically providing an opportunity for plaintiffs to plead standing. The Complaint clearly lacks facts responsive to Osborne, as there is little indication of plaintiffs' involvement with the grandchildren prior to fall 2014 events. Thus, even if the parental-liberty claim was time-barred, it would be dismissed under Rule 12(c). However, the court also needs to determine whether amendment is appropriate. Plaintiffs have indicated in their briefing that at least one of their grandchildren, Ps.M., was under their care from infancy through age 8. (See ECF No. 18 at 20-21.) Therefore, the Court will assume that plaintiffs could state adequate facts under Osborne in an amended complaint—for the sole purpose of reaching the statute-of-limitations issue.

African-American families differently from other races in matters of child custody, which the undersigned interprets as a potential Equal Protection claim under the Fourteenth Amendment. See Hines v. Youseff, 914 F.3d 1218, 1234 (9th Cir. 2019) ("[T]he Constitution generally demands race neutrality."). Finally, the undersigned notes that plaintiffs have named the County, and not the individual actors, as the sole defendant, indicating they intend to assert their Constitutional claims under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) (allowing for constitutional claims to be asserted against a local governmental where the constitutional harms are directly attributable to the government entity itself, as when the entity has a policy or custom that impinges a constitutional right or has failed to train its employees regarding that right). For purposes of the court's liberal interpretation of the Complaint, and its liberal policy concerning amendment, the court analyzes these Constitutional claims as they might apply to both the County and the seven individual actors named in the Complaint. (Compare ECF No. 18 at 3, indicating plaintiffs' rationale for why "the County is named as a defendant[.]"; with ECF No. 1, asserting facts regarding the individual actions of seven County employees.) Construing the claims for parental-liberty, equal protection, Monell liability, and Section 1985 conspiracy as all potentially cognizable (see fn. 5, above), the undersigned finds them time-barred.

Sections 1983 and 1985 contain no statute of limitations. Accordingly, federal courts apply the forum state's statute of limitations for personal injury actions, which in California is two years. Butler v. Nat'l Cmty. Renaissance of California, 766 F.3d 1191, 1198 (9th Cir. 2014); Cal. Civ. Proc. § 335.1. Though state law sets forth the length of the statute of limitations period, federal law determines when the action accrues. Morales v. City of Los Angeles, 214 F.3d 1151, 1153–54 (9th Cir. 2000). Under federal law, an action runs from the date "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007); see also Dyniewicz v. U.S., 742 F.2d 484, 486 (9th Cir. 1984) ("The general rule in [] is that the claim accrues at the time of the plaintiff's injury. Discovery of the cause of one's injury, however, does not mean knowing who is responsible for it. The 'cause' is known when the immediate physical cause of the injury is discovered.").

Here, plaintiffs allege that the County removed the grandchildren from their home

12

sometime in the latter half of 2014. Thus, any injury was sustained by plaintiffs at that time. See Wallace v. Kato, 549 U.S. 384, 391-92 (2007) (holding that the cause of action based upon the warrantless removal of the children from plaintiffs' care accrued once the juvenile court detained the children through legal process). Under California law, plaintiffs had two years from this date to file their claims in this court. Instead, they waited almost five years, until May of 2019, to file the Complaint. See, e.g., Wood v. Kern County Child Protective Services, 2014 WL 1664885 at *5 (E.D. Cal. April 14, 2014) (finding the statute of limitations ran on plaintiff's Section 1983 claims tied to the removal of her children nearly four years prior); Olague v. Cty. of Sacramento, 2013 WL 2106010, at *6 (E.D. Cal. May 14, 2013) (dismissing parental-liberty claim as time-barred pursuant to California's two-year statute of limitations), aff'd, 601 F. App'x 557 (9th Cir. 2015). Further, plaintiffs' factual scenario does not align with any of California's equitable tolling provisions. See Retail Clerks Union Local 648, AFL-CIO v. Hub Pharmacy, Inc., 707 F.2d 1030 (9th Cir. 1983) ("When federal courts borrow a state statute of limitations, they also apply the state's tolling law if it is not inconsistent with federal law."); accord Woods v. Storms, 793 F. App'x 542, 544 (9th Cir. 2020); see also 3 Witkin, Cal. Proc. 5th Actions § 694 (2020) (listing the circumstances under which California's statute of limitations can be suspended or equitably tolled[6]).

Plaintiffs argue that statutes of limitation are left to the discretion of the court, but as indicated above, this is not the rule. Further, plaintiffs indicate that the actions of, for example, Dr. Heller in 2016 indicate that the statute of limitations may start to run from this point and not

---

[6] "The statute of limitations may be suspended or equitably tolled under the following circumstances: (1) The disability of the plaintiff; (2) The disability of the attorney for a party; (3) The absence or non-residence of the defendant; (4) The death of a party; (5) A stay or other prevention of the action; (6) The commencement of the action; (7) A prior action tolling the statute on a subsequent action; (8) The trial of an insured's murder; (9) Revival by the acknowledgement of a debt; (10) Probation with an order of restitution; (11) In actions against insurers on policies of insurance, while an insurer is investigating a claim, or until final judgment in an underlying action against the insured; (12) In cases involving construction defects, defective products, and other breaches of warranty, during each period that the defendant attempts to repair the defect. Other circumstances may have the same effect, including the following: (a) Legislative changes in the limitations period, including the revival of an action previously barred.; (b) Contractual changes in the limitations period, including extending the period by a waiver; (c) Estoppel to plead the statute of limitations."

2014. (ECF No. 25 at 9-10.) The court disagrees. Plaintiffs had ample knowledge of the alleged wrong in 2014, when the grandchildren were removed from their home, and failed to bring their claims in the two years that followed. See Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir.2001) (finding that allegations of continuing impact from past violations is not sufficient to toll the statute of limitations); accord Baptiste v. Hopson, 649 Fed. Appx. 469 (9th Cir. 2016). However, even accepting plaintiffs' rationale, the complained-of actions by Dr. Heller appear to have taken place in 2016—still occurred outside the two-year limitations period. See, e.g., Zeleny v. Brown, 2019 WL 3430734, at *2 (N.D. Cal. July 30, 2019) ("For conspiracy claims arising under Sections 1983 and 1985, the statute of limitations begins to run from 'the last overt act alleged from which damage could have flowed.'") quoting Lambert v. Conrad, 308 F.2d 571, 571 (9th Cir. 1962).) More importantly, plaintiffs' argument that they (and their grandchildren) continue to suffer ill effects from the alleged Constitutional violations cannot save them from the statute of limitations. Even if some of plaintiffs' conversations with the County supervisors occurred between 2017 and 2019, those complaints are rooted in the events that took place in 2014. See Ramachandran v. City of Los Altos, 359 F.Supp.3d 801 (N.D. Cal. 2019) ("Even where acts occur as part of an ongoing policy or practice, if the 'heart of the plaintiffs' complaint does not stem from the policy ... but rather from the individualized decisions that resulted from implementation of the policy, ... [t]hese individualized decisions are best characterized as discrete acts, rather than as a pattern or practice of discrimination.'") (quoting Cherosky v. Henderson, 330 F.3d 1243, 1247–48 (9th Cir. 2003)).

For these reasons, the Complaint's Monell-styled claim against the County—premised on any alleged violations of their parental-liberty, equal protection, or Section 1985 rights—is time barred. See, e.g., Doe v. City of Eugene, 2016 WL 1385450, at *1 (D. Or. Apr. 6, 2016) (finding plaintiff's Monell claim time-barred, despite the fact that information about the alleged policy was uncovered later, where "it was clear or should have been clear that a policy or custom of the municipality caused the wrongful act."); Temple v. Adams, 2006 WL 2454275, at *10-11 (E.D. Cal. Aug. 23, 2006) (stating that a Monell claim accrues "when it is clear, or should be clear, that the 'policy or custom' caused the wrongful act," and finding the plaintiff's Monell claims time-

barred as it should have been clear to him that he sustained his injury well prior to learning of the municipality's policies) (citing Pinaud v. County of Suffolk, 52 F.3d 1139, 1157 (2d Cir. 1995)). Further, any amended complaint that would attempt to assert these same Constitutional claims against the individual County employees would also be time barred, as their acts occurred outside the limitations period. Wallace v. Kato, 549 U.S. at 391–392; Lacey v. Maricopa Cnty., 693 F.3d 896, 935 (9th Cir. 2012) ("Conspiracy is not itself a constitutional tort under § 1983, [and] does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation."); see also Wood, 2014 WL 1664885 at *5; Olague, 2013 WL 2106010, at *6. For these reasons, the court recommends the County's motion for judgment on the pleadings be granted, and leave to amend be denied.

## RECOMMENDATIONS

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for judgment on the pleadings (ECF No. 23) be GRANTED;
2. Plaintiffs' Complaint (ECF No. 1) be DISMISSED WITH PREJUDICE; and
3. The Clerk of the Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: May 14, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

moor.844